# In the United States Court of Federal Claims

### No. 11-861C

### (Filed September 5, 2012)

```
* * * * * * * * * * * * * * * * * * * * * *
                                            *
MICHAEL ANTHONY AVERY,                      *
                                            *
                          Plaintiff,        *
                                            *
        v.                                  *
                                            *
THE UNITED STATES,                          *
                                            *
                          Defendant.        *
                                            *
* * * * * * * * * * * * * * * * * * * * * *
```

## OPINION AND ORDER

This case comes before the Court on defendant's "Motion To Dismiss And In The Alternative, Motion For Judgment Upon The Administrative Record."

On December 7, 2011, *pro se* plaintiff Michael Avery filed a complaint in the Court of Federal Claims, challenging decisions of the Air Force Board for Correction of Military Records ("BCMR") as arbitrary, capricious, and "not supported by the overwhelming evidence" in denying his requests for changes to his records, back pay, and military disability benefits. Pl.'s Compl. 1. Plaintiff filed his petition with the BCMR on September 10, 2007, and it was denied December 5, 2008. AR 1, 8. He sought reconsideration on August 23, 2010, which was also denied on July 13, 2011. AR 112, 287. Overall, Mr. Avery's requests for relief amount to seven issues. Plaintiff asserts that he should have been discharged by reason of medical disability for post traumatic stress disorder ("PTSD"), and he seeks military disability pay. Pl.'s Compl. 2. He also seeks authorization to wear the Air Force Good Conduct Medal, modification of his records to reflect various training courses he completed, removal of an unfavorable referral report, compensation for the loss of promotions and pay associated with his demotion as the result of the unfavorable report and a court-martial, modification of his discharge code to reflect discharge for medical reasons, and payment for fifty days of excess leave. *Id.* 2, 6-9.

Mr. Avery's procedural history before the BCMR is extensive; in addition to the instant request and its appeal, he has filed not less than nine petitions with the board seeking relief or reconsideration of previous petitions. His first such request to the Air Force Discharge Review Board resulted in his General Discharge being upgraded to Honorable on August 16, 1971.[1] AR 314. He further applied to the BCMR for compensation for his record of severe paranoid personality disorder and for documentation of a psychiatric severe personality disorder to be removed from his record (denied, January 7, 1972), amendment of his DD Form 214 to include the discharge authority (denied, February 4, 1976), and for disability retirement (denied, October 7, 1976). AR 3. The BCMR denied a similar application pertaining to disability retirement on November 20, 1978, and subsequently denied reconsideration in 1980, 1988, and 1989. *Id.* On August 21, 2002, the Board considered and denied Mr. Avery's application for amendment to his DD Form 214 to include the locations of his service and dates of medals he earned. *Id.* On September 25, 2008 and May 20, 2010, the Board considered and denied a similar request for disability retirement, a change to his narrative reason for separation and reenlistment code, award of the Air Force Good Conduct Medal, addition of career development courses completed, and a promotion to the grade of sergeant. AR 285.

In his most recent application of August 23, 2010, Mr. Avery sought reconsideration of the Board's disability determination and requested 1) a finding that he should have been discharged medically for PTSD, back injuries, and diabetes, 2) removal from his records of an unfavorable Airman Performance Report for the period of June 12, 1968 through December 1, 1968, 3) a change in the reason for his discharge to reflect medical reasons, and 4) restoration of promotion opportunities and compensation for fifty days of excess leave. AR 284. The Board replied, denying his request on July 13, 2011. AR 287. Mr. Avery initiated this action in the Court of Federal Claims.

I.      Background

Mr. Avery entered active duty with the Air Force on June 7, 1967. AR 3. While on active duty in Thailand, he received a referral performance report for the period of June 12, 1968 through December 1, 1968 with a non-recommendation for promotion. AR 40-41. On March 20, 1969 he received a court-martial with a reduction in rank to airman, and on April 28, 1969 received an Article 15 with a reduction in rank to airman basic. AR 284.

---

[1] In his request, Mr. Avery produced a Veterans Administration diagnosis of undifferentiated schizophrenia and a 10% disability rating from August 26, 1969. AR 314.

On April 16, 1969, Mr. Avery underwent a psychiatric evaluation at his own request. AR 58. During the examination he was "noteably [sic] anxious and tense" and was observed to "harbor[] many false beliefs of a paranoid – suspicious nature, which [were] close to being delusional in intensity." *Id.* He described experiencing the sensation of being able to read minds, and noted some perceptual distortions, such as a desk appearing to him as a coffin. *Id.* Mr. Avery was diagnosed as suffering from a paranoid personality disturbance and placed in the category of a "Severe Character Behavior disorder", and given a Psychiatric Profile of S-4. *Id.* Afterward he was determined "not qualified for world wide duty" and administratively discharged for unsuitability on May 9, 1969.[2] AR 59. He never met with a Medical Evaluation Board ("MEB") or a subsequent Physical Examination Board ("PEB") prior to discharge.[3]

Following his discharge, Mr. Avery was diagnosed with schizophrenia, paranoid type, and hospitalized in 1969. AR 67. In the following years he was diagnosed at a variety of institutions with schizophrenia, anxiety neurosis, depression, paranoid personality, and personality disorder. *Id.* On April 12, 1971 the Department of Veterans Affairs ("VA") hospital in Brooklyn, New York admitted Mr. Avery for pain, weakness in the legs, diminished vision, and stated "[i]t was felt that the patient's problem was mostly anxiety." AR 63. He was discharged May 28, 1971. *Id.* In the following years, a number of institutions in New York and Alabama treated Mr. Avery as an outpatient. AR 67.

---

[2] Discharge was pursuant to U.S. Dep't of Air Force, Manual 39-12, Ch. 2, ¶ 2-4(b), which states "[a]n airman is subject to discharge for unsuitability when one or more of the conditions noted below exist . . . (b) Personality Disorder. . . . which interferes with member's ability to adequately perform duties." AR. 62. Mr. Avery's condition was determined not to be a disability as per Air Force Manual 35-4. AR 58.

[3] A Physical Examination Board, formerly known as a Retiring Board, determines a servicemember's fitness for duty and entitlement to disability retirement after a Medical Evaluation Board finds they do not meet military retention standards. *Chambers v. United States*, 417 F.3d 1218, 1225 n.2 (2005). The BCRM Medical Consultant, Dr. Horace Carson, suggested in his April 8, 2008 report that had Mr. Avery received his schizophrenia diagnosis prior to leaving military service, he would have been referred to an MEB and PEB, wherein he "would likely have been found unfit for military service and separated with disability." AR 86. The BCMR however declined to accept this recommendation to grant relief, remarking that had plaintiff completed the MEB processing, he would have faced dual-action consideration, and may have been administratively discharged anyway (as happened). AR 6. The BCMR then denied plaintiff's petition stating, "we note that there is no evidence that the applicant suffered from a psychiatric disorder that should have been considered in the disability evaluation system at the time of his administrative separation in 1969." *Id.*

On November 24, 1993, Dr. Bronsky treated Mr. Avery in Tuscaloosa, Alabama and recommended his diagnosis be changed to post traumatic stress syndrome with moderate dysfunction in the social and vocational areas. AR 69. In his exam results, Dr. Bronsky also alluded to an earlier diagnosis contained in Mr. Avery's C File, in which a Dr. S. Geber, a psychiatrist at the Tuscaloosa VA, first diagnosed Mr. Avery as suffering from PTSD in 1988. AR 67. Another medical record from the Tuscaloosa VA Medical Clinic dated November 28, 1989 describes Mr. Avery as "experiencing an acute post traumatic stress neurose [sic]." AR 64. Giving plaintiff the benefit of the doubt, he was aware or should have been aware of his PTSD diagnosis in the late 1980s to the early 1990s.

II.     Discussion

Courts allow *pro se* litigants more latitude in their pleadings and do not hold them to the rigid formalities imposed upon represented parties. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because Mr. Avery is appearing *pro se*, his pleadings "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21, (1972)). Although "leniency with respect to mere formalities should be extended to a *pro se* party," *Kelley v. Sec'y, U.S. Dep't of Labor,* 812 F.2d 1378, 1380 (Fed. Cir. 1987), a *pro se* plaintiff is not excused from his or her burden of proving, by a preponderance of the evidence, that the court possesses jurisdiction. *See Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

A.  Legal Standard

Defendant moves to dismiss pursuant to United States Court of Federal Claims Rule ("RCFC") 12(b)(1) for lack of subject matter jurisdiction, RCFC 12(b)(6) for failure to state a claim upon which relief may be granted, or, alternatively, for judgment upon the administrative record pursuant to RCFC 52.1. Before reaching the merits of a case, "a court must satisfy itself that it has jurisdiction to hear and decide" the case. *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004). On a party's motion to dismiss for lack of subject matter jurisdiction, a court generally accepts "the facts alleged in the complaint to be true and correct." *Reynolds*, 846 F.2d at 747. When the Court's subject matter jurisdiction is challenged pursuant to RCFC 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Taylor v. United States,* 303 F.3d 1357, 1359 (Fed. Cir. 2002). The Court of Federal Claims may consider the administrative record when addressing a 12(b)(1) motion. *Gilbreth v. United States*, 94 Fed. Cl. 88, 94 (2010).

B.  Subject Matter Jurisdiction

4

Like the United States District Courts, the Court of Federal Claims is a court of limited jurisdiction. *Schmidt v. United States*, 89 Fed. Cl. 111, 118 (2009) (citing *United States v. King*, 395 U.S. 1, 3 (1969)). Mr. Avery filed suit under the Tucker Act, which confers jurisdiction upon the Court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2011). Although the Tucker Act grants jurisdiction over certain classes of claims, it does not itself "create a substantive cause of action[.]" *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1306 (Fed. Cir. 2008). Rather, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

A six-year statute of limitations exists for claims brought against the Government in the Court of Federal Claims. *See* 28 U.S.C. § 2501 (2011). This limitation is "jurisdictional" in nature, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008), and it "cannot be waived or extended by equitable considerations." *Young v. United States*, 529 F.3d 1380, 1384 n.1 (Fed. Cir. 2008).[4] A cause of action under the Tucker Act "accrues as soon as all events have occurred that are necessary to enable the plaintiff to bring suit, *i.e.,* when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment and sue here for his money.'" *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)).

---

[4] Unlike the statutory authority governing the BCMR which allows an exception to the three-year time limit when "in the interest of justice", no such waiver is possible under the Tucker Act's six-year limitation. *Fulbright v. United States*, 97 Fed. Cl. 221, 231 (2011). *Compare* 10 U.S.C. § 1552(b) (2011), *with* 28 U.S.C. § 2501.

5

C.  Plaintiff's Claims for Relief

1.  Plaintiff's Claim for Excess Leave Pay is Time-Barred

The Military Pay Act is a "money-mandating statute" that allows the court to grant monetary relief.  *Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004). *See* 37 U.S.C. § 204 (2011).  While Mr. Avery's complaint does not specifically cite its provisions, a *pro se* plaintiff's complaint is interpreted liberally, and the Court may infer that he seeks relief for military back pay in accordance with its provisions.  In his complaint, plaintiff alleges that he is due pay for fifty days of excess leave.  Pl.'s Compl. 8.

It is well settled that a plaintiff's cause of action for military back pay "accrues all at once at the time of discharge[.]" *Martinez*, 333 F.3d at 1303. "[C]laims for unpaid wages accrue 'when the government first fails to make a salary payment.'"  *Barney v. United States*, 57 Fed. Cl. 76, 83 (citing *Curry v. United States*, 52 Fed. Cl. 799, 801 (2002), *aff'd,* 60 Fed. Appx. 312 (Fed. Cir. 2003)).  A plaintiff's use of permissive administrative remedies, such as an appeal to the BCMR, does not toll the statute of limitations or create a separate cause of action for review of the administrative decision.  *Dubsky v. United States*, 98 Fed. Cl. 703, 707 (2011) (citing *Martinez*, 333 F.3d at 1304).  Mr. Avery's claim for pay relating to excess leave therefore would have arisen when it was due to be paid to him, or at the very latest upon his discharge on May 9, 1969 – over forty-three years ago.  His subsequent application to the BCMR could not create a new claim or revive the claim for past-due pay for leave, which became time-barred at the very latest on May 9, 1975.  Since plaintiff filed his complaint on December 7, 2011, this falls far outside the six-year statute of limitations mandated by the Tucker Act.  Plaintiff's claim must therefore fail for lack of subject matter jurisdiction.

2.  Plaintiff's Claim for Disability Benefits is Time-Barred

A servicemember may also bring a proper Tucker Act claim for "entitlement to military disability pay under 10 U.S.C. § 1201." *Fulbright v. United States*, 97 Fed. Cl. at 228 (citing *Chambers*, 417 F.3d at 1223).  It is important to note the difference between disability benefits through the VA, which awards compensation for service-connected disabilities irrespective of when the disability manifests itself, and Air Force disability retirement, which is awarded only if the disability negatively affects job performance prior to the end of active-duty service.  *See Gilbreth*, 94 Fed. Cl. at 97; 10 U.S.C. § 1201(a)-(b) (2011).  In the current proceedings, Mr. Avery seeks the latter.  For compensation for military disability, a servicemember must suffer from a permanent disability manifesting prior to the end of active service.  10 U.S.C. § 1201(a), (b)(1)-(2). Servicemembers with less than twenty years of active service must have a

6

disability rating of at least 30% under the VA's schedule of ratings.[5]  *Id.* at § 1201(b)(3)(A)-(B).  A rating by the VA obtained years after discharge will not affect an earlier assessment made by a formal PEB upon discharge.  *Sabree v. United States*, 90 Fed. Cl. 683, 696 (2009).

Unlike claims relating to military pay or discharge, "a disability retirement claim under 10 U.S.C. § 1201 accrues, and the statute of limitations begins to run, when 'an appropriate military board either finally denies such a claim or refuses to hear it.'"  *Smalls v. United States*, 298 Fed. Appx. 994, 996 (Fed. Cir. 2008) (citing *Chambers*, 417 F.3d at 1224).  Generally the retiring board is the first competent board to review a servicemember's disability retirement pay claim in order to start the limitations period upon denial by that board; however, where the servicemember has not had or sought a PEB, his claim does not accrue until final action by the correction board, which stands in the place of the PEB as the proper tribunal to determine eligibility for disability retirement.  10 U.S.C. § 1201; *Sabree*, 90 Fed. Cl. at 694 (citing *Friedman v. United States*, 159 Ct. Cl. 1, 24, 310 F.2d 381, 396 (Ct. Cl. 1962)).  The Federal Circuit addressed a limited exception to the "first competent board rule" in *Real*, where it held a claim accrued at discharge when "the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge."  *Real v. United States*, 906 F.2d 1557, 1562 (Fed. Cir. 1990).  Once a claim has accrued, subsequent determinations by the corrections board do not toll the statute of limitations, nor result in the accrual of a new claim. *Friedman*, 310 F.2d at 390.[6]

---

[5] Both the military service branches and the VA rely on the Veterans Affairs Schedule for Rating Disabilities ("VASRD"), however, they do so in different ways by determining fitness for military duty or for civilian life, respectively. *Sabree*, 90 Fed. Cl. at 695-96.  The military uses the VASRD, "to determine fitness for performing the duties of office, grade, and rank, whereas . . . the VA uses the VASRD [after discharge] to determine the disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world."  *Id.* (quoting *Haskins v. United States*, 51 Fed. Cl. 818, 826 (2002)); *Gilbreth*, 94 Fed. Cl. at 97.

[6] Though filing subsequent appeals to the military corrections board will not usually toll a service member's claim, if the armed service itself reopens the case, the previous board's action is not "final" for purposes of claim accrual; hence, a servicemember's claim would not accrue until the new board issues a final decision.  *See Gilbreth*, 94 Fed. Cl. at 95-96 (where reconsideration was likely obtained by someone other than the plaintiff, this was "tantamount to a *sua sponte* reopening [of the Board's decision].").

While Mr. Avery did not obtain a PEB decision for disability upon his discharge, he first submitted his claim for disability before the BCMR on April 19, 1976, making that Board the "first competent board" to issue final action on his disability claim for the purposes of starting the statute of limitations. The BCMR denied his claim on October 7, 1976. Thus, six years from that final decision, on October 7, 1982, the claim became time-barred.

Plaintiff's complaint asserts his diagnosis of PTSD, a condition which can take years to manifest and which was not recognized until the 1980s, over a decade after his discharge. *See* AR 86 ("full manifestations of PTSD may be delayed, or may remain dormant for months to years following a given initial traumatic exposure"). Unfortunately for the success of plaintiff's claim, the Court has emphasized that there is but one claim for disability, and different diagnoses attaching to the same set of facts will not result in a new cause of action. *See Schmidt*, 89 Fed. Cl. at 122 ("a servicemember is only entitled to one claim for military disability benefits."); *Van Allen v. United States*, 70 Fed. Cl. 57, 63-64 (2006) (finding that claim accrued on first Correction Board decision when plaintiff petitioned post-discharge for disability retirement based on undiagnosed lupus E. symptoms, was denied, and years later petitioned again based on newly diagnosed arachnoid cyst); *Friedman*, 159 Ct. Cl. at 33, 310 F.2d at 401 ("out of one set of facts and circumstances involving the claimant's separation from service there arises but one claim for the same kind of relief"). *But see Williams v. United States*, 91 Fed. Cl. 560, 567 (2010) (later date of Board decision started the statute of limitations, because it was the first time plaintiff raised the fifteen-year letter claim as a basis for disability benefits).[7] Here, Mr. Avery asks this Court to reconsider the same set of facts and circumstances present at his discharge which was examined in 1976 by the "first competent board", and revisited numerous times in subsequent years. The six-year limit on this Court's ability to hear the claim expired nearly thirty years ago.

A petition for reconsideration by the Board does not restart the statute of limitations unless there is a showing of new evidence or changed circumstances. *See Interstate Commerce Comm'n v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278-79 (1987). In order to restart the statute of limitations, any motion for reconsideration must be made within a reasonable time. *Van Allen v. United*

---

[7] *Williams* is contrary to the usual line of decisions in these matters, as in that case the Court started the statute of limitations running not from the first Board's decision, but from the first time the Correction Board heard the plaintiff's disability claim regarding a fifteen-year letter which would have qualified him for disability on a separate ground than the epilepsy claim he had previously brought before the Board. *See Williams*, 91 Fed. Cl. at 567. This decision is distinguishable on the grounds that the letter sought disability pursuant to the special provisions of 10 U.S.C. § 12731b(a), rather than the usual § 1201. *Id.*

*States*, 236 Fed. Appx. 612, 614-15 & n.2 (Fed. Cir. 2007). Even if Mr. Avery were to prove that his new diagnosis with PTSD constituted the new evidence or changed circumstances upon which a Board might modify its decision for lack of finality, his claims for reconsideration were also denied considerably longer than six years before he brought his complaint in this Court. Under the *Oja* "knew or should have known" standard for claim accrual, Mr. Avery's claim would accrue upon his knowledge of the PTSD diagnosis. *See Oja v. Dep't of Army*, 405 F.3d 1349, 1358 (Fed. Cir. 2005). The administrative record places the earliest diagnosis in 1988. AR 67. Plaintiff petitioned the BCMR on March 28, 1988 for disability retirement, and then again for reconsideration. The Board denied these claims on June 20, 1988 and May 15, 1989.[8] Thus, even if these Board decisions were to restart the statute of limitations, claims would have been time barred after May 15, 1995.

If the November 23, 1993 diagnosis date is used, Mr. Avery waited fourteen years to bring the claim before the BCMR for reconsideration, far outside the "reasonable time" contemplated for bringing a motion for reconsideration to the Board. *See Schmidt*, 89 Fed. Cl. at 122 (dismissing as barred by statute of limitations *pro se* veteran's claim for disability benefits, and finding even if latest date of diagnosis could restart statute of limitations, six years was "clearly beyond the 'short or reasonable time' for a petition for reconsideration to restart the statute of limitations); *Smalls*, 298 Fed. Appx. 994, 996-97 (Fed. Cir. 2008); *Van Allen,* 236 Fed. Appx. at 614-15 & n.2 (two years "clearly exceeds the short or reasonable period which serves to deprive an administrative decision of finality for statute of limitations purposes") (citing *Chambers*, 417 F.3d at 1226; *Real v. United States*, 906 F.2d at 1561-63). In summation, even construing dates as favorably to plaintiff as is reasonably possible, Mr. Avery's complaint will always fall outside the six-year statute of limitations.

Plaintiff's claim cannot be saved by the legal disability tolling provision of the Tucker Act either. While the Tucker Act does not permit equitable tolling, its text does contain a tolling provision for plaintiffs under a legal disability. "A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases." 28 U.S.C. § 2501.

---

[8] Documentation for these denials do not appear in the administrative record, however they are alluded to in the statement of facts of the more recent December 5, 2008 BCMR decision. AR 3. It is unclear whether these petitions specifically listed "post traumatic stress disorder" as plaintiff's new evidence or changed circumstances for reconsideration. Even if they did not, however, plaintiff "knew or should have known" of his condition by that date. *See Oja*, 405 F.3d at 1358.

Mr. Avery, in spite of his diagnosis, does not meet the stringent test the court has adopted for a legal disability. To rise to the level of legal disability, as required to toll the limitations period under the Tucker Act, a plaintiff's mental illness must be acute and extreme; that is, the plaintiff's mental illness must render the plaintiff incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities. *Schmidt*, 89 Fed. Cl. at 123 (internal quotations omitted); *Goewey v. United States*, 612 F.2d 539, 544 (Cl. Ct. 1979). In *Goewey*, despite the plaintiff's history of mental illness, which included treatment and hospitalization for various types of obsessive compulsive disorder and a suicidal attempt, the Court found that plaintiff's participation in efforts to obtain release from a hospital by filing habeas corpus petitions, secure VA benefits for himself and his family, defend his criminal prosecutions, and draft correspondence affecting his interests "ma[de] it abundantly clear that plaintiff was able to understand such complexities and was decidedly not adverse to protecting his interests to the utmost." *Goewey*, 612 F.2d at 545. Here too, Mr. Avery is cognizant of the processes by which he may seek relief, and indeed has vigorously petitioned for relief from the BCMR on numerous occasions. *See* AR 288-323. Thus, like the plaintiff in *Goewey*, Mr. Avery is similarly able to understand and pursue remedies to "protect his interests to the utmost" and the statute of limitations cannot be tolled on his behalf.

### 3. Plaintiff's Claims for Injunctive Relief are Barred for Lack of Jurisdiction.

Plaintiff's claims for correction of his military records, authorization to wear a medal, removal of an unfavorable report, and various forms of injunctive relief must be dismissed for lack of subject matter jurisdiction, as they do not implicate a money-mandating statute, and are not incidental or collateral to a monetary judgment. *See Visconi v. United States*, 455 Fed. Appx. 986, 988 (Fed. Cir. 2012) (affirming Court of Federal Claims' dismissal for lack of subject matter jurisdiction veteran's complaint seeking the correction of his military records to reflect award of disputed medals and other injunctive relief). The Federal Circuit has made clear that 10 U.S.C. § 1552 relating to the correction of military records is not a money-mandating statute such that it confers jurisdiction under the Tucker Act. *Id.* Therefore, plaintiff's claims for injunctive relief relating to the correction of his records must be dismissed.

It is true that the Court of Federal Claims may provide certain kinds of equitable relief when they are "incident of and collateral to" a monetary judgment. *See* 28 U.S.C. § 1491(a)(2); *United States v. Testan*, 424 U.S. 392, 404 n.7 (1976). Here, however, the court has no jurisdiction to hear plaintiff's monetary claims, as they are time-barred by the statute of limitations, *see supra*, so no other relief is appropriate as it would be neither incidental nor collateral to a

monetary judgment. *See Flowers v. United States*, 321 Fed. Appx. 928, 933 (Fed. Cir. 2008) ("Because we have affirmed, *supra,* the trial court's judgment on the administrative record of Flowers's military pay claim, to which equitable relief might conceivably have been tied, we likewise affirm its holding that the absence of money damages in this case divests the court of its ability to grant equitable relief."); *Young v. United States*, No. 11-231, 2012 WL 758058, at \*13 (Fed. Cl. March 6, 2012) (dismissing veteran plaintiff's claims for equitable relief where he failed to state a claim for monetary judgment). Therefore, plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

III.    Conclusion

For the above-mentioned reasons, the Court lacks jurisdiction over plaintiff's claims.[9] Defendant's Motion to Dismiss is therefore GRANTED, and the Clerk is directed to dismiss the complaint without prejudice. No costs.

IT IS SO ORDERED.

_____
**BOHDAN A. FUTEY**
**Judge**

---

[9] Since the Court finds that it lacks jurisdiction over plaintiff's claims, it is not necessary to consider the merits of defendant's motion to dismiss for failure to state a claim upon which relief may be granted, or alternatively, for judgment upon the administrative record.